FILED

2007 OCT 12  AM 9: 48

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ *CP* _____DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
|     Plaintiff, ) | CIV. NO. 03-CV-1349K (POR) |
| ) | |
|     v. ) | FINAL CONSENT DECREE |
| ) | |
| CITY OF SAN DIEGO, ) | |
| ) | |
|     Defendant. ) | |

------------------------------------------------

| | |
|---|---|
| SAN DIEGO BAYKEEPER, et al., ) | |
| ) | |
|     Plaintiffs, ) | CIV. NO. 01-CV-0550B (POR) |
| ) | |
|     v. ) | |
| ) | |
| CITY OF SAN DIEGO, ) | |
| ) | |
|     Defendant. ) | |

------------------------------------------------

## TABLE OF CONTENTS

I.     JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-

II.    VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-

III.   PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-

IV.    DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-

V.     OBJECTIVES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

VI.    BINDING EFFECT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

VII.   COMPLIANCE ACTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

VIII.  PLAN AND REPORT REVIEW AND APPROVAL . . . . . . . . . . . . . . . . . . . . . . . -37-

IX.    DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -40-

X.     FORCE MAJEURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -44-

XI.    STIPULATED PENALTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -46-

XII.   PAYMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -49-

XIII.  RIGHT OF ENTRY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -50-

XIV.   NOT A PERMIT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -50-

-i-

XV.     ONGOING COMPLIANCE RESPONSIBILITIES ........................ -50-

XVI.    EFFECT OF SETTLEMENT ........................................ -51-

XVII.   RESERVATION BY BAYKEEPER AND SURFRIDER .................. -52-

XVIII.  NO ADMISSION OF LIABILITY ................................... -52-

XIX.    CERTIFICATION OF SUBMISSIONS/RECORD RETENTION ............ -52-

XX.     FORM OF NOTICE .............................................. -53-

XXI.    COSTS OF SUIT/COMPLIANCE MONITORING ....................... -54-

XXII.   MODIFICATION ................................................ -55-

XXIII.  CONTINUING JURISDICTION OF THE COURT ....................... -55-

XXIV.   TERMINATION ................................................ -55-

XXV.    SIGNATORIES ................................................ -58-

XXVI.   COUNTERPARTS ............................................... -58-

XXVII.  PUBLIC COMMENT ............................................. -58-

-ii-

1   **WHEREAS**, Plaintiff, the United States of America ("United States"), by the authority of

2   the Attorney General of the United States and through its undersigned counsel, acting at the

3
4   request and on behalf of the Administrator of the United States Environmental Protection Agency

5   ("EPA"), filed a Complaint on July 9, 2003, seeking injunctive relief and civil penalties pursuant

6   to Section 309 of the Federal Water Pollution Control Act, as amended by the Clean Water Act

7   of 1977 and the Water Quality Act of 1987 ("CWA" or "Act"), 33 U.S.C. § 1319, naming as

8   defendant the City of San Diego, California ("the City");

9       **WHEREAS**, the State of California, ("the State") *ex rel.* the Regional Water Quality

10
11  Control Board, San Diego Region, ("the Regional Board") filed a Complaint on July 11, 2003,

12  seeking injunctive relief pursuant to Section 309 of the CWA, 33 U.S.C. § 1319, naming as

13  defendant the City;

14      **WHEREAS**, Plaintiffs San Diego Baykeeper ("Baykeeper") and the Surfrider

15  Foundation ("Surfrider") (herein collectively "Citizen Plaintiffs") served the City; the United

16
17  States Attorney General; EPA; the State Water Resources Control Board; and the Regional

18  Board, with a notice of intent to file suit ("60-Day Notice") under Sections 505(a) and (b) of the

19  CWA, 33 U.S.C. § 1365(a) and (b) on October 30, 2000, alleging that the City had in the past

20  and continues to violate Section 301(a) of the CWA, 33 U.S.C. § 1311(a), by violating the City's

21  Sanitary and Storm Water Permits;

22      **WHEREAS**, on March 29, 2001, Baykeeper and Surfrider filed a Complaint against the

23
24  City;

25      **WHEREAS**, the City owns and operates a publicly-owned wastewater collection and

26  treatment system that is regulated by identical 2002 permits issued by EPA under the CWA and

27
28                                      -3-

the Regional Board under the California Porter-Cologne Water Quality Control Act, respectively, NPDES permit CA0107409 (September 13, 2002), Order Number R-9-2002-0025 (April 10, 2002) and Order Number 2002-0013 (August 15, 2002)("the permit");

**WHEREAS**, the Plaintiffs allege that the City has violated and continues to violate the CWA as a result of sanitary sewer overflows ("SSOs") from its publicly-owned treatment system;

**WHEREAS**, EPA issued a Finding of Violation and Order pursuant to Sections 308(a) and 309(a) of the CWA on April 5, 2002, setting forth a comprehensive set of requirements to be met by the City to reduce and eliminate sewage spills;

**WHEREAS**, the City contends that it has upgraded the operation and maintenance of its wastewater collection and treatment system to reduce unpermitted overflows and that its operation and maintenance program meets or exceeds all applicable federal and state regulations;

**WHEREAS**, the requirements of Section VII (Compliance Actions) Paragraphs B - D, of this Final Consent Decree represent infrastructure improvements and upgrades designed to reduce municipal sanitary sewer overflows that will require significant capital expenditures, and the City plans to pursue a combination of funding sources that may include, but are not limited to, state assistance, federal assistance, bonding, and other public and private financing to assist in the implementation of such improvements;

**WHEREAS**, the Mayor and Members of the City Council created a formal Citizen's Clean Water Task Force to reduce SSOs and passed Resolution No. R-295587 on October 16, 2001, which raised sewer service rates 7.5% for each of the Fiscal Years 2002-2005 and dedicated a specific portion of those increases exclusively to sewer pipe replacement and

-4-

1   rehabilitation;

2       **WHEREAS**, the City paid penalties of $6,258,900 to the Regional Board from 2000 to

3   2005 for various sewage spills occurring prior to October 1, 2004 ($2,115,500 in cash and

4
    $4,143,400 in supplemental environmental projects);
5

6       **WHEREAS**, the parties previously entered into a Partial Consent Decree and a Second

7   Partial Consent Decree to immediately implement short-term capital improvement projects and

8   operation and maintenance requirements;

9       **WHEREAS**, the Partial Consent Decree expired on June 30, 2006, and the Second

10
    Partial Consent Decree expires on June 30, 2007;
11

12      **WHEREAS**, the City asserts it has substantially complied with the EPA's Finding of

13  Violation and Order, and the First and Second Partial Consent Decrees, and the City thereby

14  asserts that the number of wastewater overflows was reduced by approximately 77% from 2000

15  through 2006;

16
        **WHEREAS**, the Mayor and City Council approved Resolution No. R-302378 on
17

18  February 26, 2007, increasing sewer revenues incrementally by 8.75% in each of fiscal years

19  2007 and 2008, and by 7% in each of fiscal years 2009 and 2010, primarily to fund the capital

20  improvements required by this Final Consent Decree;

21      **WHEREAS**, the United States, Citizen Plaintiffs, and the City (collectively referred to

22
    herein as the "Settling Parties" or "Parties") agree that it is in the public interest to enter into this
23
    Final Consent Decree;
24

25      **WHEREAS**, the Court finds that this Final Consent Decree is a reasonable and fair

26  settlement and that it adequately protects the public interest in accordance with the CWA.

27

28                                      -5-

1    **NOW THEREFORE,** it is hereby ORDERED, ADJUDGED, and DECREED as

2    follows:

3                                    **I. JURISDICTION**

4

5        This Court has jurisdiction over the subject matter of the claims asserted by the United

6    States pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b) and 28 U.S.C. § 1331.  This

7    Court has jurisdiction over the claims brought by the Baykeeper and Surfrider pursuant to

8    Section 505(a) of the CWA, 33 U.S.C. § 1365(a), and 28 U.S.C. § 1331.

9                                      **II. VENUE**

10

11        Venue is proper in the United States District Court for the Southern District of California

12   pursuant to Sections 309(b) and 505(c) of the CWA, 33 U.S.C. §§ 1319(b) and 1365(c), and

13   28 U.S.C. §§ 1391(b), because it is the judicial district in which the alleged violations occurred.

14                                    **III. PARTIES**

15        A.      Baykeeper is a nonprofit public benefit corporation organized under the laws of

16   the State of California, with its principal place of business in San Diego, California.  Baykeeper

17   is a membership organization that is dedicated to the preservation and enjoyment of the oceans,

18

19   waves, and beaches.  Its members currently use and enjoy the ocean and beaches of San Diego

20   County for a variety of recreational, esthetic, economic, and other purposes.  Baykeeper brought

21   this action on behalf of itself and its members.

22        B.      Surfrider is a nonprofit public benefit corporation organized under the laws of the

23   State of California, with its principal place of business in San Clemente, California.  Surfrider is

24

25   a membership organization that is dedicated to the preservation and enjoyment of the oceans,

26   waves, and beaches.  Its members currently use and enjoy the ocean and beaches of San Diego

27

28                                        -6-

County for a variety of recreational, esthetic, economic, and other purposes.  Surfrider brought this action on behalf of itself and its members.

C.    The United States appears on behalf of EPA, a federal agency with responsibility for enforcing the CWA.

D.    The City is a California municipal corporation and possesses NPDES Permit No. CA0107409 to discharge treated effluent from the Point Loma Metropolitan Wastewater Treatment Plant.  The City owns and operates a publicly owned treatment works as defined in 33 U.S.C. § 1292 and 40 C.F.R. § 403.3.

## IV. DEFINITIONS

Unless otherwise defined herein, terms used in this Final Consent Decree shall have the meaning given to those terms in the CWA, 33 U.S.C. §§ 1251-1387, and the regulations promulgated thereunder.  For the purposes of this Final Consent Decree, the following terms shall have the meaning provided below:

"Acute Defect" means a defect that substantially increases the probability of a material SSO, and includes conditions leading to imminent structural collapse or that would create repeated blockages.

"Administrative Order" means the Finding of Violation and Order, Docket No. CWA-309-9-02-17 that EPA issued to the City on April 5, 2002, pursuant to Sections 308(a) and 309(a) of the CWA, which was withdrawn by the EPA upon entry of the Partial Consent Decree on September 13, 2005.

"Canyon Economic and Environmental Analysis" means an analysis of the feasibility of relocating sewer lines out of each canyon.

-7-

"Capital Improvement Program" ("CIP") means the City's ten (10) year "rolling" sewer repair, rehabilitation and replacement planning document.

"Collection System" means all pipes, manholes, sewer lines, pump stations, and appurtenances thereto under ownership of the City that are intended to convey domestic or industrial wastewater to the City's wastewater treatment plants.

"Contractor" as used in this Final Consent Decree, means the City's contractor(s) and subcontractor(s), agents, assigns, successors, and duly authorized representatives of City contractors.

"Director" means the Director of the EPA Region 9 Water Division.

"Lamping" means an inspection method in which a light source is put into a manhole and a visual device, such as a mirror, is placed in an adjacent manhole to try to detect blockages in the pipe.

"Large Diameter Pipes" means pipes in the City of San Diego's wastewater collection system that are greater than fifteen (15) inches in diameter.

"Plan for Accelerated Cleaning Program" means the plan the City submitted to EPA on September 27, 2002.

"Plan for Root Control Program" means the plan the City submitted to EPA on September 27, 2002.

"Plan for Sewer Overflow Response and Tracking" means the plan the City submitted to EPA dated October, 2003.

"Plan for Sewer Pipe Inspection and Condition Assessment" means the plan the City submitted to EPA on September 27, 2002.

-8-

"Plan for Sewer Repair, Rehabilitation, and Replacement" means the plan the City submitted to EPA on September 27, 2002.

"Plan for Fats, Oils & Grease ("FOG") Blockage Control" means the plan the City submitted to EPA on September 27, 2002.

"Plan for Canyon Area Spill Elimination" means the plan the City submitted to EPA on September 27, 2002.

"Plan for Pump Station and Force Main Spill Reduction Action" means the plan the City submitted to EPA on September 27, 2002.

"Plan to Address Other Sanitary Sewer Overflows" means the plan the City submitted to EPA on September 27, 2002.

"Plan for Capacity Assurance" means the plan the City submitted to EPA on September 27, 2002.

"Plan for System-wide Cleaning Program" means the plan the City submitted to EPA on January 29, 2004.

"Sanitary Sewer Backup" or "SSB" is a wastewater backup into a building or solely onto private property from a private lateral that is caused by a blockage or other malfunction in the Collection System.

"Sanitary Sewer Overflow" or "SSO" means an overflow, spill, or release of wastewater from the Collection System at any point upstream of the sewage treatment plant.  For purposes of this Final Consent Decree only, an SSB is an SSO.

"Section" shall mean the sections denoted by a roman numeral.

"Small Diameter Pipes" means pipes in the City of San Diego wastewater collection

-9-

system that are less than or equal to fifteen (15) inches in diameter.

"United States" shall mean the United States of America.

## V. OBJECTIVES

In entering into this Final Consent Decree, the Parties intend to further the objectives set forth in Section 101 of the CWA, 33 U.S.C. § 1251, to settle the claims alleged by the Plaintiffs in their respective Complaints and to achieve expeditious compliance with this Final Consent Decree for such purposes as eliminating spills to the extent feasible.

## VI. BINDING EFFECT

A.      The provisions of this Final Consent Decree shall apply to, and be binding upon the City, United States, EPA, Baykeeper, and Surfrider and their successors and assigns.

B.      The City shall give written notice, and provide a copy of this Final Consent Decree to any person or entity to whom the City may transfer ownership or operation of its publicly owned treatment works, including any portion of the Collection System.  The City shall notify the United States and EPA in writing of any successor in interest at least forty-five (45) days prior to any such transfer.

C.      The City shall provide a copy of this Final Consent Decree, or otherwise make it available to:

1.      Each engineering, consulting, and contracting firm to be retained to perform any material activities required by this Final Consent Decree upon execution of any contract relating to such work; and

2.      Each engineering, consulting, and contracting firm already retained for such purpose.

-10-

D.      In an action to enforce this Final Consent Decree, the City shall not assert as a defense against the Plaintiffs that any of its officers, directors, employees, agents, servants, Contractors, successors or assigns are responsible for the City's failure to perform under this Final Consent Decree.

## VII. COMPLIANCE ACTIONS

A.      The City has completed the plans listed below for the operation and maintenance of its Collection System. The City shall use best efforts to implement the plans identified below for the operation and maintenance of the Collection System. The City may subsequently modify these Paragraph A plans to incorporate new information and to make maintenance of the collection system more efficient or to make other changes that the City deems appropriate that are not inconsistent with the objectives of this Final Consent Decree. The City's obligation to implement these Paragraph A plans shall not be subject to enforcement under this Final Consent Decree.

1.      Plan for Sewer Overflow Response and Tracking;

2.      Plan for System-wide Cleaning Program;

3.      Plan for Accelerated Cleaning;

4.      Plan for Root Control Program;

5.      Plan for Sewer Pipe Inspection and Condition Assessment;

6.      Plan for Sewer Repair, Rehabilitation and Replacement;

7.      Plan for Fats, Oils & Grease ("FOG") Blockage Control;

8.      Plan for Canyon Area Spill Elimination;

9.      Plan for Pump Station and Force Main Spill Reduction Action;

-11-

10.    Plan to Address Other Sanitary Sewer Overflows; and

11.    Plan for Capacity Assurance.

The City shall implement and meet the specific requirements of Paragraphs B - H below. In the event of a conflict between the requirements in Paragraphs B - H below and the Paragraph A plans listed above, the requirements in Paragraphs B - H below shall supercede the listed plans.

B.    SSO RESPONSE AND TRACKING

1.    In addition to the information required to be reported pursuant to Statewide WDR No 2006-003-DWQ and Regional Board Order R9-2007-0005, the City's NPDES permit, and any other applicable local, state or federal requirement, the City's Quarterly SSO reports required under Section VII (Compliance Actions) Paragraph H of this Final Consent Decree shall include at a minimum:

a.    The name of the trunk sewer (for SSOs relating to trunk sewers);

b.    The name of the canyon (for SSOs relating to canyons);

c.    The total SSO volume (excluding SSBs), the volume returned to the system, and the volume not captured; and

d.    The total SSB volume.

2.    The City shall have crews on duty and available for response to SSOs twenty-four (24) hours per day every day of the year with the exception of the ten (10) holidays designated by the City.  On each of the ten (10) holidays, the City shall have a duty supervisor on call who is able to immediately mobilize response crews.  The City shall make all reasonable efforts to respond to a SSO within thirty (30) minutes of notification.

-12-

3.      For any SSB about which a private customer contacts the City for assistance or the City otherwise responds to, if either a licensed plumber or the City concludes that an SSB has occurred, the City must follow the same response procedures as it follows for other SSOs.

4.      The City shall maintain a SSO response log including response times. The City may maintain a separate log for SSBs.

5.      The City shall operate and maintain a flow metering alarm system that covers at least ninety percent (90%) of the flow weighted length of the City's three hundred forty (340) miles of trunk sewers, including all canyon trunk sewers. The system must be capable of detecting and notifying City staff within ninety (90) minutes of reductions in flow of twenty-five percent (25%) or more of the average dry weather flow during dry weather conditions.

C.   CONTROL OF NON-CAPACITY RELATED SSOS

1.      SYSTEM-WIDE GRAVITY COLLECTION SYSTEM CLEANING PROGRAM

a.      By March 31, 2004, with the exception noted below, the City shall complete at least one (1) cleaning of each sewer pipe in the City's two thousand eight hundred nineteen (2,819) mile gravity municipal collection system. However, the City may decide not to clean up to thirty (30) miles of pipe located in environmentally sensitive areas and/or in non-right-of-way areas if the CCTV inspection demonstrates the pipe is clear, or for which permits cannot be obtained by the City to allow for the cleaning prior to March 31, 2004. The City will make all reasonable efforts to obtain such permits in a timely manner. In the event the CCTV inspection demonstrates that the pipe requires cleaning, the City shall continue with the

-13-

permitting process for sewer pipe cleaning and complete the required cleaning activities within

six (6) months of completing the cleaning permit process.

    b.  Starting April 1, 2004, the City shall clean each sewer pipe in the

City's two thousand five hundred thirty-eight (2,538) mile small diameter gravity collection

system on a minimum five (5) year frequency.  For each five (5) year cleaning cycle, the City

may elect to exclude from cleaning up to thirty (30) miles in environmentally sensitive non-right

of way areas if the CCTV inspection demonstrates the pipe is clear.  Starting April 1, 2004, the

City shall clean each sewer pipe in the City's two hundred eighty-one (281) mile large diameter

gravity system on a minimum five (5) year frequency unless the City can demonstrate the pipe is

adequately clean through a cleaning needs assessment consisting of CCTV, hydraulic

investigation, manhole inspection, and/or personnel entry into the sewer pipe.  All miles cleaned

under this Paragraph may be included in the one thousand five hundred (1,500) miles of annual

cleaning required in Section VII (Compliance Actions) Paragraph C 2a.

    c.  By March 1st of each calendar year and pursuant to Section VII

(Compliance Actions) Paragraph G of this Final Consent Decree, the City shall submit an annual

report to EPA for review pursuant to Section VIII (Plan and Report Review and Approval) that

documents which sewers and how many miles of pipe were cleaned as part of the system-wide

cleaning program during the previous calendar year.  The report shall distinguish between sewer

pipes in canyon and non-canyon areas.  The annual report shall describe the status of any pipes

included in the thirty (30) miles described in Paragraphs a. and b. above, specify which miles

were included in the thirty (30) miles, and explain the basis for not cleaning any Large Diameter

Pipes.

2.     ACCELERATED PREVENTIVE MAINTENANCE (ACCELERATED PM) CLEANING PROGRAM

a.     The City shall clean a minimum of one thousand five-hundred (1,500) miles of pipe per year.  Calculation of the 1,500 miles may include problem pipe segments that are cleaned more frequently than annually.

b.     To make changes to the cleaning frequency of its pipes, the City shall use a cleaning algorithm based upon SSO history and the pipe conditions observed in the field.  The City shall use the following "condition findings" in its algorithm used to adjust pipe cleaning frequencies:

c.     CONDITION FINDINGS:

| Clear | Light | Medium | Heavy |
|-------|-------|--------|-------|
| No observable grease, roots, or sludge | 1.0 to 1.5 gallons of sludge, small chunks of grease, slight detection of root mass, 20 to 30 minutes to clean a line, 1 to 2 passes to clear the water. | 2 to 3 gallons of sludge, moderate chunks of grease, observable root mass, 30 minutes to clean a line, 2 to 3 passes to clear the water. | 4 or more gallons of sludge, grease, clumps of roots, more than 30 minutes to clean, more than 4 passes to clear the water. |

Note: A "line" is a pipe segment of approximately 300 feet length between two manholes.

d.     Based on one of the methods below, the City may determine whether to increase or decrease the pipe cleaning frequency changes.

(I)     Method 1: Software Algorithm Recommendations

Cleaning Frequency Decreases:

| Category | Findings | Frequency Step Change |
|----------|----------|-----------------------|
| 1 to 6 Month: | Clear for three consecutive cleaning cycles | A One-Step Frequency Decrease to a time interval of 3, 6, or 12 months. |

-15-

| 12 to 24 Month: | Clear for two consecutive cleaning cycles | A One-Step Frequency Decrease to a time interval of 24 or 60 months. |
|---|---|---|
| 60 Month: | N/A | Small diameter pipes on a 60 month schedule will never be cleaned less frequently.  Large Diameter pipes may skip cleaning if a physical inspection per Section VII (Compliance Actions) Paragraph C 1b., determines that the pipe is clear. |

Cleaning Frequency Increases:

| Category | Findings | Frequency Step Change |
|---|---|---|
| 1 to 6 Month: | Findings of either 1 Medium Or 1 Heavy during any cleaning cycle | A One-Step Frequency Increase to a time interval of 1 or 3 months. An existing 1 month time interval will not be reduced but will be transferred for further consideration under Method 2: Crew/ Supervisor Recommendations. |
| 12 to 24 Month: | Findings of either 2 Medium Or 1 Heavy during any cleaning cycle | A One-Step Frequency Increase to a time interval of 6 or 12 months. |
| 60 Month: | Findings of either 1 Medium Or 1 Heavy during any cleaning cycle | A One-Step Frequency Increase to a time interval of 24 months. |

Note: All Findings Depict Pipes that have been cleaned within +/-25% of their current frequency's scheduled cleaning date.

(ii)    Method 2: Crew/ Supervisor Recommendations

Changes to cleaning frequencies for pipes that recently have been repaired, rehabilitated, or replaced shall be made in Regular Sanitary Sewer Overflow Report Tracking ("SSORT") or other appropriate meetings held by City staff.  Corrective actions and appropriate frequency adjustments shall be made based upon SSO/ blockage relief cleaning findings, historical cleaning

-16-

data, and if available, CCTV data.

   e. By March 1st of each year, and pursuant to Section VII (Compliance Actions) Paragraph G of this Final Consent Decree, the City shall submit an annual report to EPA for review pursuant to Section VIII (Plan and Report Review and Approval) that: (I) documents which sewers and how many miles of pipe were cleaned as part of the Accelerated PM cleaning program during the previous calendar year; (ii) includes a table containing the number of miles of sewer pipes within each cleaning frequency and the number of miles identified for the Repair, Rehabilitation, and Replacement Program; (iii) describes the success of the program at preventing repeat blockages and sewage overflows from pipes included in the Accelerated PM cleaning program; and (iv) distinguishes between pipes in canyons and pipes located elsewhere.

   3. <u>ROOT CONTROL PROGRAM</u>

   a. The City shall utilize mechanical root control to clean at least three hundred fifty (350) miles of pipe each year.  The 350 miles of pipe mechanically cleaned under this Paragraph may be included in the cleaning miles required in Section VII (Compliance Actions) Paragraph C 2a.

   b. The City shall utilize chemical root control to treat at least one hundred fifty (150) miles of pipe each year.  Mileage chemically-treated under this Paragraph may be included in the cleaning miles required in Section VII (Compliance Actions) Paragraph C 2a., if the chemical treatment is independent from the mechanical root cleaning miles counted in

-17-

Section VII (Compliance Actions) Paragraph C 3a.  Due to advances in mechanical root control processes, the City may substitute some or all of the miles of chemical root control required by this Paragraph with additional mechanical root control above the miles required in Paragraph C 3a.

          c.      By March 1st of each year, the City shall submit an annual report pursuant to Section VII (Compliance Actions) Paragraph G of this Final Consent Decree, to EPA for review pursuant to Section VIII (Plan and Report Review and Approval) documenting how many miles of pipe were subject to mechanical and chemical root control, respectively, during the previous year.  The report shall evaluate the success of the program, distinguish between pipes in canyons and pipes located elsewhere and document any problem pipe segments or lines that are referred to the Sewer Repair, Rehabilitation, and Replacement Program in Paragraph C 5 below.

        4.      SEWER PIPE INSPECTION AND CONDITION ASSESSMENT

          a.      The City shall inspect each gravity sewer pipe that experiences a blockage leading to an SSO using CCTV or other appropriate inspection methods as soon as is practicable but no later than two (2) weeks following the SSO.  Lamping may not be used for purposes of satisfying the obligations of this Paragraph 4.

          b.      Having completed CCTV inspection of one thousand two-hundred (1,200) miles of its pipelines, all pipe installed prior to 1965, all trunk sewers prior to 1991, and all high maintenance sites by June 2004, the City shall complete CCTV inspection of at least forty (40) miles of its pipelines each year, focusing on pipelines in high-maintenance areas and ensuring that all pipe over forty (40) years old is inspected by CCTV.  The calculation of the 40

-18-

miles requirement may not include CCTV inspections done pursuant to Paragraph a. above or Section VII (Compliance Actions) Paragraph C 1.

        c.      The City shall inspect all manholes in its collection system every five (5) years, starting from September 13, 2005.

        d.      The City shall prepare condition assessment reports following CCTV inspections that, at a minimum, document the following:

        (I)      Defects that materially threaten the structural integrity of the pipe or structure;

        (ii)      Material defects that allow infiltration, inflow, or exfiltration;

        (iii)      Material pipe defects, including but not limited to, cracks, holes, corrosion, misaligned joints, root intrusion, sags, improper lateral taps, or other defects that make the pipe or structure prone to grease, root, or debris blockages;

        (iv)      A rank or score of the condition of each inspected pipe or structure on a sliding scale that indicates the severity of any defects found;

        (v)      Whether the pipe or structure requires either short or long-term repair under Paragraph 5 below;

        (vi)      Changes to cleaning frequency as a result of the assessment; and

-19-

1                       (vii)    An estimate of the expected remaining life of the pipe or

2

3   structure.

4                  e.      By March 1st of each year, the City shall submit an annual report

5

6   pursuant to Section VII (Compliance Actions) Paragraph G of this Final Consent Decree, to EPA

7   for review pursuant to Section VIII (Plan and Report Review and Approval) summarizing the

8

9   findings of the sewer pipe condition assessments conducted during the previous calendar year,

10   documenting any past changes in inspection methods, and differentiating between inspections

11

12   and condition assessments of pipes in canyons and pipes located elsewhere.

13            5.       SEWER REPAIR, REHABILITATION, AND REPLACEMENT

14                  a.      The City shall repair all Acute Defects within one (1) year of

15   discovery of the defect.  The City shall maintain a log listing all sewer line Acute Defects in need

16   of expeditious repair or replacement, the date the City discovered the Acute Defect, a schedule

17   for performing the repair or replacement, and the date of project completion.

18

19                  b.      Between January 1, 2002 and June 30, 2007, the City shall replace,

20   rehabilitate, or permanently repair two hundred (200) miles of pipeline.  Beginning July 1, 2007,

21   the City shall replace, rehabilitate, or permanently repair a total of two hundred fifty (250) miles

22   prior to termination of this Final Consent Decree according to the following schedule:

23

24

25

26

27

28                             -20-

| Miles of Pipeline | Schedule |
|:---:|:---:|
| 30 | 7/1/2007 - 6/30/2008 |
| 45 | 7/1/2008 - 6/30/2009 |
| 45 | 7/1/2009 - 6/30/2010 |
| 45 | 7/1/2010 - 6/30/2011 |
| 45 | 7/1/2011 - 6/30/2012 |
| 40 | 7/1/2012 - 6/30/2013 |

Permanent repair means the correction of a structural defect in a manhole to manhole pipe segment such that the repaired segment has the same life expectancy as a rehabilitated pipe segment. If more than two hundred (200) miles of pipeline are replaced, rehabilitated, or permanently repaired between January 1, 2002 and June 30, 2007, the City may hold those miles in reserve to be applied, if needed, against the requirement to replace, rehabilitate, or permanently repair pipeline for any future year. If more than the specified miles of pipeline are replaced, rehabilitated, permanently repaired in one year, beginning July 1, 2007, the City may hold those miles in reserve to be applied, if needed, against the requirement to replace, rehabilitate, or permanently repair pipeline in any future year. The City shall maintain a log listing each sewer pipe and structure project completed during the previous year and the date the project was completed.

        c.     The City shall maintain a rolling ten (10) year CIP.

        d.     By March 1st of each year, the City shall submit an annual report pursuant to Section VII (Compliance Actions) Paragraph G, to EPA for review pursuant to Section VIII (Plan and Report Review and Approval) which describes all Acute Defect and long-term projects completed in the previous year pursuant to this Paragraph, distinguishes

-21-

1   between canyon and non-canyon projects, documents all projects referred to programs under

2   other Paragraphs of this Section, and includes copies of the Acute Defect logs for the previous

3   year.  Upon request by EPA, the City shall provide EPA with a copy of its full CIP within thirty

4   (30) days.  Nothing in this Paragraph 5 shall require the City to implement any of the projects

5

6   listed in the CIP not otherwise required hereunder.

7          6.      FATS, OILS & GREASE ("FOG") BLOCKAGE CONTROL PROGRAM

8                  a.      For at least the duration of this Final Consent Decree, the City shall

9

10  implement a Residential Grease Outreach and Education Program consisting of the following

11  elements.

12                         (i)     The City shall distribute informational FOG postcards to all

13  residents living within a one thousand (1,000) foot radius of each residential grease SSO within

14  ten (10) working days of a SSO;

15

16                         (ii)    The City shall prepare and distribute FOG inserts with City

17  water/sewer bills semiannually;

18

19                         (iii)   The City shall produce residential grease Public Service

20  Announcements and broadcast them on the City's public access channel at least twice per week;

21

22                         (iv)    The City shall prepare and maintain grease education

23  information on the MWWD web site; and

24

25                         (v)     The City shall attend the annual Apartment and

26  Condominium Owner's Association convention to publicize its FOG program.

27

28                                          -22-

b.        The City shall implement a program for timely enforcement and inspection follow-up at Food Service Establishments ("FSE"). At a minimum, the City shall:

(I)        Inspect each FSE at least once every two (2) years. Inspection of FSEs maintaining full compliance shall continue on a biannual frequency. Any FSE found to be in violation shall be inspected at least every ninety (90) days until full compliance is demonstrated for a minimum of two (2) ninety (90) day inspection cycles;

(ii)        Issue a formal Notice of Violation to an FSE within two (2) weeks of discovering a violation;

(iii)        Hold administrative hearings within ninety (90) days of the NOV if the FSE fails to comply with the NOV or has had two (2) NOVs within the last year or for the same compliance issue and, if non-compliance continues, hold a Permit Revocation hearing within ninety (90) days of the administrative hearing and, if necessary, terminate water service if the City is the water service provider;

(iv)        Issue compliance schedules, assess fees or penalties, and revoke permits as necessary to ensure compliance;

(v)        Inspect each new and substantially remodeled FSE within four (4) months of the FSE's start up; and

(vi)        Assure adequate budget and staffing to meet the above

-23-

1  requirements.

2          c.      By March 1st of each year, the City shall submit an annual report

3

4  pursuant to Section VII (Compliance Actions) Paragraph G of this Final Consent Decree to EPA

5  for review pursuant to Section VIII (Plan and Report Review and Approval) documenting the

6  activities carried out under the FOG Blockage Control Program during the previous year.  The

7
   report shall:  (i) include copies of the FSE inspection and enforcement log for the previous year,
8
   and (ii) discuss budget and staffing levels for the previous and current years.
9

10         7.      CANYON AREA SSO ELIMINATION

11         a.      By no later than March 1, 2009, the City shall complete the Canyon

12  Economic and Environmental Analyses for the forty-two (42) canyons listed below in order to

13  evaluate the feasibility and need to relocate the sewer lines out of canyon bottoms.  The

14
    economic and environmental analyses shall include both quantitative and qualitative costs and
15
16  benefits of alternatives, weigh environmental impacts, and address stakeholder and community

17  input.  The analyses shall consider the life cycle costs of the alternatives.  When estimating the

18  cost to maintain sewer facilities in canyons, the cost of the increased risk of an SSO occurring

19
    and the cost of the impacts to the canyon habitat resulting from necessary canyon access and
20
21  maintenance, as required by Section VII (Compliance Actions) Paragraphs C 1, C 2, C 3, and C 7

22  will be considered.  Where the life cycle cost of redirecting flow is less than thirty-five percent

23  (35%) more than the life cycle cost of leaving the flow in place, and where environmental and

24  community interest factors indicate that flow should be redirected in whole or in part, redirection

25
    shall be undertaken.  Those sewers identified for relocation shall be included in the next update
26
27  of the City's CIP.  Nothing in Section VII (Compliance Actions) of this Final Consent Decree

28                                            -24-

shall require the City to relocate any sewer.

        b.     The City shall conduct analyses for a minimum of six (6) canyons a year, starting January 1, 2004, for the following canyons, giving priority to those canyons containing pipeline identified as a priority under Section VII (Compliance Actions) Paragraph C 4.

- Tecolote
- East Tecolote (East Clairemont)
- Stevenson
- Van Nuys
- San Clemente
- Upper Rose
- Middle Rose
- Lower Rose
- Dakota
- Manning
- Acuña
- Park Mesa
- Bounty & Waring
- Mission Center Road
- Lake Murray
- Adobe Falls
- Mission Gorge (Junipero Serra)

-25-

- Chollas Creek
- Chocolate (Home Avenue)
- Switzer
- Carroll (Rock Quarry)
- Alvarado
- Sorrento/Flintkote
- Roselle/Sonico
- Lopez
- Peñasquitos
- Peñasquitos Bluffs
- Rose Creek East of I-805
- Mesa College and I-805 (Onalaska)
- Black Mountain
- Shawn
- Shepherd (Santo Road)
- Woodman
- Lexington
- Washington Creek
- Highway 163 Corridor
- El Camino Real/San Dieguito Road
- Florida
- Sevan Court

•     Skylark

•     Rancho Mission

•     45th & Boston

If more than six (6) Canyon Economic and Environmental Analyses are completed in one (1) year, the City may hold these analyses in reserve to be applied, if needed, against the requirement to complete six (6) analyses per year in any future year.

        c.      The City shall implement the following minimum measures:

            (I)      The City shall conduct an annual visual exterior inspection of each canyon area trunk sewer, including examination of each maintenance hole structure for structural integrity, examination of any exposed sewer pipes, and observation of any condition in the canyon area that could pose a threat to pipes or maintenance hole structures. The City shall assess the environmental and other external physical factors that may lead to a structural failure. Annual inspections shall include such factors as erosion, landslides, flooding, excessive plant growth, and any circumstances that could affect pipe or maintenance hole structural integrity.

            (ii)      During each annual inspection of canyon trunk sewers required by Subparagraph (I) above, the City shall identify all potentially vulnerable sections of canyon pipelines.

            (iii)      The City shall visually inspect all potentially vulnerable sections of canyon pipelines within one (1) week of every significant rainfall (over 0.5" within a twenty-four (24) hour period).

            (iv)      The City shall conduct cleaning and annual maintenance of each canyon area sewer pipe and maintenance hole structure, including, but not limited to,

-27-

control of erosion that may undermine sewer pipes or maintenance hole structures, diversion of channels when necessary to protect the infrastructure, rebuilding of deteriorated maintenance hole structures, and the securing of maintenance hole covers to prevent vandalism as specified in Section VII (Compliance Actions) Paragraph C 9b.

          (v)     The City shall obtain short and long-term access to each canyon area sewer pipe sufficient to allow for the cleaning and annual inspection of such pipes as required by this Final Consent Decree.

        d.     By March 1st of each year the City shall submit an annual report to EPA for review pursuant to Section VII (Compliance Actions) Paragraph G of this Final Consent Decree, documenting which canyon sewers were cleaned and/or inspected during the previous calendar year, listing all potentially vulnerable sections of canyon pipelines identified in Subparagraph c.(ii) above, describing the plans the City intends to undertake for the then current year, summarizing and including the sewer relocation economic and environmental analyses completed in the previous calendar year, and listing those canyons for which economic and environmental analyses will be done in the current year.

        8.     <u>PUMP STATION AND FORCE MAIN SSO REDUCTION ACTION PROGRAM</u>

        a.     The City shall complete the following projects by the dates specified below:

-28-

PUMP STATIONS WITH IMPROVEMENTS UNDER DESIGN AND CONSTRUCTION:

| Pump Station No. | Construction Completion Date | Description of Work |
|---|---|---|
| 18 (Phase II) | Dec 2008 | Mechanical & electrical upgrades[a], storage tank[b], and on-site generator |
| 79 | Dec 2008 | Replace pumps and motors and install properly sized storage tank[b], electrical upgrades, odor control, SCADA controls and alarms, and redundant force main |
| 62 | May 2013 | Install properly sized storage tank[b], odor control, and redundant force main |
| 43, 44, 46, 47, 51, 54, 60, 71, 73, 74, 75, 76, 80, 81, 82 | Jun 2013 | Replace pumps and motors; add redundant force main, storage tank[b]; upgrade SCADA and odor controls |
| 84 | Jun 2013 | Replace pumps and motors; add redundant force main, storage tank[b]; upgrade SCADA and odor controls |
| 52, 53, 55, 56, 57, 58 | Jun 2009 | Replace pumps and motors; upgrade SCADA &and odor controls |
| 63 | Dec 2008 | Mechanical & electrical upgrades[a]; add redundant force main, storage tank[b], on-site generator and SCADA controls |
| 41 | Nov 2010 | Build a new PS to code (properly sized wetwell, storage tank[b], odor control, on-site generator, SCADA controls and alarms, and redundant force main) then demolish old pump station |
| (a) Mechanical and Electrical Upgrades may include one or more of the following: replace pumps and motors, upgrade or add ventilation systems, add alarms, upgrade or add a sump pump, add remote control ability for certain functions (i.e., the on-site generator), and all related electrical work for the new mechanical work. | | |
| (b) All storage tanks in conjunction with in-system storage shall have a minimum of two (2) hours capacity during peak wet weather flow conditions. | | |

        b.     By March 1st of each year the City shall submit an annual report

pursuant to Section VII (Compliance Actions) Paragraph G of this Final Consent Decree, to EPA

for review pursuant to Section VIII (Plan and Report Review and Approval), documenting the

1    City's progress in the projects during the previous year.

2         9.    PROGRAM TO ADDRESS OTHER CAUSES OF SSOS

3              a.    The City shall require all Contractors working under a new

4    construction contract to have an approved SSO response plan prior to initiating work if the

5

6    construction work is to occur within a public right-of-way or sewer easement.  All City

7    construction contracts must contain provisions that allow the City to impose penalties and/or

8    cleanup costs on any Contractor whose activities, or failure to act, result in an SSO or other

9    violation of this Final Consent Decree.

10

11             b.    The City shall secure at least six hundred (600) manhole covers in

12   remote areas each year with all five thousand eight hundred (5,800) +/- covers to be secured prior

13   to termination of this Final Consent Decree.  If more than 600 manhole covers in remote areas

14   are secured in one (1) year, the City may hold these secured covers in reserve to be applied, if

15   needed, against the requirement to secure 600 manhole covers per year in any future year.

16

17             c.    The City shall conduct a Public Outreach Program to educate the

18   public about vandalism.

19             d.    By March 1st of each year the City shall submit an annual report

20   pursuant to Section VII (Compliance Actions) Paragraph G of this Final Consent Decree, to EPA

21   for review pursuant to Section VIII (Plan and Report Review and Approval), documenting the

22

23   activities carried out under this program, summarizing the SSOs caused by Contractors or

24   vandalism, and distinguishing between SSOs in canyon and non-canyon areas.

25

26

27

28                              -30-

1

D.    COLLECTION SYSTEM CAPACITY ASSESSMENT AND ASSURANCE

2

    1.    Capacity Assessment

3

    a.    The City shall continue to use the dynamic model developed as

4

5

required by the U.S.A. v. City of San Diego, Case No. 88-1101-B, Stipulated Final Order for

6

Injunctive Relief, to analyze the hydraulic capacity of all trunk sewers fifteen (15) inch in

7

diameter or greater. The City will ensure that system capacity is sufficient and will continue to

8

collect flow monitoring data in both dry and wet weather and perform a dynamic modeling

9

analysis for all of the City's trunk sewers. The City will add thirteen (13) new permanent flow

10

meters on trunk sewers fifteen (15) inches in diameter or greater by December 31, 2005, at an

11

12

additional cost of approximately $1.3 million. Combining the existing and additional flow

13

meters, the total monitoring coverage in flow weighted length shall exceed ninety percent (90%).

14

For the remaining trunk sewers not permanently monitored, the City will install temporary

15

meters, on a rotational basis, to monitor at least one (1) twelve (12) month continuous period for

16

17

each of the trunk sewers by termination of the Final Consent Decree. The data from this

18

additional metering will be incorporated into the criticality assessment for the trunk sewers. The

19

modeling analysis shall include trunk-by-trunk model calibrations based on dry weather flow

20

monitoring data and model simulations for the present, future (5-10 years), and wet weather

21

scenarios. By July 31, 2006, the City shall submit a Trunk Sewer Capacity Assessment Report

22

23

documenting the findings of the above mentioned modeling analysis. The report shall prioritize

24

the trunk sewers as either critical, semi-critical, or non-critical, according to the flow monitoring

25

and modeling results. The City shall update the Trunk Sewer Capacity Assessment Report on an

26

annual basis, considering new flow trends, changes in the sewer system, and other modifications.

27

28

The report and/or updates shall be provided to Plaintiffs annually.

           b.     If the City experiences a significant SSO/SSOs caused by a lack of capacity during any calendar year beginning two (2) years after entry of this Final Consent Decree, the City shall pay Citizen Plaintiffs up to $25,000 to review and assess the City's capacity assessment and assurance program. Such payment will only be made at most once during the period of the Final Consent Decree. Nothing contained in the results of such review and assessment by the Citizen Plaintiffs shall require the City to perform any additional work. For purposes of this Paragraph, an SSO caused by lack of capacity means an SSO caused by any flow less than a ten (10) year return wet weather flow in any trunk sewer fifteen (15) inches or greater exceeding the flow capacity of that sewer except when the City demonstrates that a specific blockage or condition defect occurred and was a material cause of the SSO. Overflows on trunk sewers identified in the CIP for improved capacity are not included herein.

     2.     Capacity Assurance Program

     The City shall implement and complete the following capacity improvement projects on the schedule below. These projects may be included in the mileage required in Section VII (Sewer Repair, Rehabilitation, and Replacement) Paragraph C 5b.

TRUNK SEWERS

| Trunk | Trunk Name | Construction Completion Date |
|---|---|---|
| 40 | Miramar Road | November 2008 |
| 43 | Sorrento Valley | November 2008 |
| 32 | Lake Murray | December 2011 |
| 63 | Crown Point | December 2009 |

| 12 | East Point Loma | December 2011 |
| 88 | Penasquitos Views | December 2010 |
| 6 | South Mission Valley | October 2011 |
| 62 | Sunset Cliffs | July 2012 |
| 71 | Pacific Highway | August 2012 |
| 16 | Grantville | November 2012 |
| 7 | Alvarado Phase III | November 2012 |
| 75 | Palm City | November 2012 |
| 55 | USIU-Miramar | April 2013 |
| 67 | Balboa Avenue | May 2013 |
| 31 | Montezuma Road | June 2013 |
| 67 | Balboa Terrace | June 2013 |
| 13 | Harbor Drive | June 2013 |

As a result of the ongoing capacity assessment, the City shall describe any proposed schedule or project changes/additions it seeks to make to this Paragraph with a justification and seek EPA's approval under Section VIII (Plan and Report Review and Approval) Paragraphs A and B of this Final Consent Decree.

3.     By March 1st of each year the City shall submit an annual report pursuant to Section VII (Compliance Actions) Paragraph G of this Final Consent Decree, to EPA for review pursuant to Section VIII (Plan and Report Review and Approval), detailing at a minimum, the upgrades made during the previous year and the effectiveness of those upgrades at eliminating SSOs.

E.     EXTENSION OF TIME FOR CAPITAL PROJECTS

1.     Notwithstanding the deadlines for capital projects contained in Paragraphs C 5b., C 8a., and D 2 of this Section, the City has the right to extend any schedule for such capital projects for a period of up to one (1) year and upon written notification to EPA. Any obligation so extended must be completed prior to termination of the Final Consent Decree. The City's right to extend a schedule pursuant to this Paragraph shall not be subject to dispute

-33-

1  resolution.

2      2.      The City shall list any such delays, the reasons for them, and the new

3  schedule in the annual report required by Paragraph G of this Section.

4      F.      OTHER SSO REQUIREMENTS

5

6  The City shall continue to reduce the frequency and volume of SSOs.

7      G.      ANNUAL PROGRESS REPORT

8      1.      By March 1st of each year this Final Consent Decree remains in effect, the

9  City shall submit an annual progress report to EPA, with copies to Baykeeper and Surfrider.  This

10  report (or parts thereof) shall be reviewed and, where so provided, approved or disapproved

11  following the process in Section VIII (Plan and Report Review and Approval) Paragraphs A - D

12  of this Final Consent Decree.

13

14      2.      The report shall:

15      a.      Include the specific annual reporting requirements set forth in

16  Paragraphs B through D above;

17

18      b.      Provide other details relevant to the City's implementation of, and

19  compliance with, this Final Consent Decree during the preceding year, including any program

20  modifications during the prior calendar year or delays pursuant to Section VII (Compliance

21  Actions) Paragraph E;

22

23      c.      Assess the City's progress towards meeting the requirements of

24  this Final Consent Decree program-by-program and overall;

25      d.      Report the volume, number, and location of SSBs;

26

27      e.      Report the volume, number, and location of SSOs, with the

28                                      -34-

1   exception of SSBs reported under Subparagraph d. above, and compare the volume, number, and

2   location of the SSOs reported under this Subparagraph to SSOs occurring since 1997; and

3

4           f.      Propose new or modified plans in any area where the City has

5   materially failed to comply with the requirements of this Final Consent Decree. The plan shall

6   identify the material impact of the proposed changes on other obligations in this Section VII

7   (Compliance Actions) of this Final Consent Decree. Nothing in this Paragraph shall require the

8   City to perform any work not otherwise required in Section VII (Compliance Actions).

9

10          3.      MODIFICATION OF COMPLIANCE OBLIGATIONS

11          a.      Starting three (3) years after entry of this Final Consent Decree, the

12  annual report may include a request for EPA to modify the requirements specified in Paragraphs

13  C 1b., C 2a., C 2b., C 2c., C 3a., C 3b., C 6a., C 8a., C 9b., or D 2 of this Section.

14

15          b.      The annual report submitted in 2007 and any annual report

16  thereafter may include a request for EPA to modify any requirement specified in Section VII

17  (Compliance Actions), Paragraphs B - C and D 2. However, except as provided in Section IX

18  (Dispute Resolution) Paragraph E 1, EPA's decision to approve or disapprove a modification

19  request under this Subparagraph shall not be subject to dispute resolution under Section IX

20  (Dispute Resolution) of this Final Consent Decree.

21

22          c.      All requests for modification of the Final Consent Decree

23  requirements under Subparagraphs a. and b. above shall:

24                  (I)     Include a specific justification for the request;

25                  (ii)    Include proposed language modifying the existing Final

26  Consent Decree requirement; and

27

28                                          -35-

(iii)    Be aggregated in one (1) section of the annual report. However, subject to the limitations in Paragraphs a. and b. above, the City may make requests for modification of the Final Consent Decree outside the annual report cycle in exigent circumstances.

d.    The City may request the Citizen Plaintiffs to modify the requirements specified in Paragraph D 1 of this Section.  In the event the Citizen Plaintiffs deny such request, the City shall not have the right to contest that decision.  EPA approval is not necessary to modify the requirements specified in Paragraph D 1; provided, however, EPA shall be provided copies of all documents as if EPA is a party.

e.    Starting three (3) years after entry of this Final Consent Decree, the City may request the Citizen Plaintiffs to modify the requirements specified in Paragraph D 1 of this Section.  In the event the Citizen Plaintiffs deny such request, the City shall have the right to seek direct review in the United States District Court, and Section IX (Dispute Resolution) of this Final Consent Decree shall not apply.  EPA approval is not necessary to modify the requirements specified in Paragraph D 1; provided, however, EPA shall be provided copies of all documents and/or pleadings as if EPA is a party.

H.    QUARTERLY SSO REPORTS

On the first day of February, May, August, and November in each calendar year in which activities are conducted pursuant to this Final Consent Decree, the City shall submit a summary of all SSOs occurring during the previous calendar quarter to EPA, with copies to Baykeeper and Surfrider, along with the primary factors contributing to the SSOs if known. The reports shall:

-36-

1.    Indicate which SSOs occurred in canyons;

2.    Indicate whether SSOs entered waters of the United States and, if so, whether they entered via storm drains or other man-made conveyances; and

3.    Differentiate between SSBs and all other SSOs.

I.    OTHER REPORTS

Upon the request of a Plaintiff, the City shall provide any information required by this Final Consent Decree or relevant to implementation or compliance with any provision of this Final Consent Decree.

J.    PACIFIC BEACH POINT STUDY

By June 30, 2006, the City will complete a study of Pacific Beach Point to:

1    Seek to identify the sources, if any, of bacteriological contamination; and

2.    Develop recommendations to remedy the sources identified, if any.  This study shall not exceed a cost of $250,000, and the final report shall be furnished to Baykeeper, Surfrider, and EPA.  Nothing contained in this section shall require the City to perform any work or remediation recommended in said study.

VIII.  PLAN AND REPORT REVIEW AND APPROVAL

A.    The submittal of any plan or report required by this Final Consent Decree shall be subject to EPA's review and/or approval as specified in Section VII (Compliance Actions) and Paragraphs B - D below.  Copies of all such plans and reports and follow-up correspondence shall be provided simultaneously to Citizen Plaintiffs.  The City shall respond to reasonable

-37-

1    requests for additional documentation by Citizen Plaintiffs.

2          B.      For new or modified plans submitted under Section VII (Compliance Actions)
3
4    Paragraph G 2f. or for requests by the City under Section VII (Compliance Actions) Paragraph G
5    3a. - c. to modify a requirement in Section VII (Compliance Actions) Paragraphs C 1b., C 2a., C
6    2b., C 2c., C 3a., C 3b., C 6a., C 8a., C 9b., or D 2:

7                 1.      EPA shall:

8                         a.      Approve the submission or request in whole or in part;
9
10                        b.      Approve the submission or request with specified conditions;
11                        c.      Modify the submission or request to cure any deficiency;
12                        d.      Disapprove the submission or request in whole or in part, directing
13   the City to correct any deficiency; or
14
15                        e.      Any combination of the above.
16                2.      Citizen Plaintiffs shall submit any written comments to EPA and the City
17   within thirty (30) days of the City's submission.

18                3.      EPA shall use its best efforts to take the actions in Paragraph 1 above
19   within ninety (90) days of receipt of the City's submission. If EPA does not take action by the
20
21   end of the ninety (90) days, the City's submission shall be deemed disapproved, but the City need
22   not take corrective action until EPA specifies the required corrections. If EPA takes no action by
23   the time of receipt of the subsequent annual report (or termination of this Final Consent Decree),
24   the prior annual report(s) shall be deemed approved.

25                4.      The City shall revise the plan or report to correct any deficiency identified
26   by EPA within sixty (60) days of receipt of EPA's action, unless the time is extended by mutual
27
28                                                   -38-

1    agreement of EPA and the City.

2         5.    In the event that a revised submission is disapproved in whole or in part,

3    EPA may again require the City to correct the deficiencies.  The City shall take the action

4
     specified by EPA within sixty (60) days, subject only to its right to invoke dispute resolution
5

6    under Section IX (Dispute Resolution) of this Final Consent Decree.  The sixty (60) days may be

7    extended by mutual agreement of the EPA and the City up to an additional sixty (60) days.

8    Nothing in this Paragraph shall require the City to perform any work not otherwise required by

9    Section VII (Compliance Actions).

10
         6.    Within thirty (30) days, Citizen Plaintiffs may challenge an EPA action
11

12   approving a major modification of the activities required in Section VII (Compliance Actions) by

13   invoking Dispute Resolution under Section IX (Dispute Resolution) of this Final Consent

14   Decree.  The thirty (30) days may be extended by mutual agreement of the Parties.

15
     C.    For reports requiring EPA review but not approval, EPA shall use its best efforts
16

17   to complete its review within one hundred twenty (120) days of receipt of the City's submission.

18   If, upon review, EPA determines that the City is failing to comply with Section VII (Compliance

19   Actions) Paragraphs B - D of this Final Consent Decree, EPA shall notify the City to submit a

20   plan to address the deficiencies, following the process described in Paragraph B above.  Nothing

21   in this Paragraph shall require the City to perform any work not otherwise required in Section VII

22
     (Compliance Actions).
23

24   D.    For requests by the City under Section VII (Compliance Actions) Paragraph G

25   3(b) to modify a requirement in Section VII (Compliance Actions), EPA shall use its best efforts

26   to make a decision within ninety (90) days of receipt of the City's submission.  If EPA does not

27

28                                          -39-

1   take action by the end of the ninety (90) days, the City's submission shall be deemed pending,

2   and the City shall not modify the requirements requested until approved by EPA.

3       E.      Upon EPA's approval of the submissions, any changes that supercede existing

4

5   requirements in Section VII (Compliance Actions) Paragraphs B - D of this Final Consent Decree

6   shall be incorporated by reference as enforceable parts of this Final Consent Decree.

7

8                           IX. **DISPUTE RESOLUTION**

9       A.      Unless otherwise expressly provided for in this Final Consent Decree, the dispute

10

11  resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising

12  under or with respect to this Final Consent Decree.  However, the procedures set forth in this

13

14  Section shall not apply to:

15          1.      Actions by the United States to enforce obligations of the City that have

16

17  not been disputed in accordance with this Section; or

18          2.      Any disputes concerning the issuance, modification, revocation, or

19

20  reissuance of NPDES permits; or

21          3.      Any requests made pursuant to Section VII (Compliance Actions)

22  Paragraph G 3b., d., and e.

23

24      B.      A dispute shall be considered to have arisen when one (1) party sends the other

25  party a written Notice of Dispute.  As used in this Paragraph, parties shall refer to the Chief,

26

27  CWA Compliance Office, Water Division, EPA Region 9, for the United States, the Director of

28                          -40-

1   the Metropolitan Wastewater Department for the City, and the attorneys for Citizen Plaintiffs.

2
3   Any dispute that arises under or with respect to this Final Consent Decree shall in the first

4   instance be the subject of informal negotiations between the parties to the dispute.  During the

5
6   informal negotiations the EPA shall identify the reasons for the non-approval.  The period for

7   informal negotiations shall not exceed thirty (30) days from the time the dispute arises, unless it

8   is modified by written agreement of the parties.

9
10          C.      1.      In the event that the Parties cannot resolve a dispute by informal

11  negotiations under the preceding Paragraph B, the City or Citizen Plaintiffs may invoke formal

12
13  dispute resolution procedures by providing the Director with a written statement of position on

14  the matter in dispute, including, but not limited to, any factual data, analysis or opinion

15
16  supporting that position and any supporting documentation relied upon by the City or Citizen

17  Plaintiffs.  Such statement of position shall be provided within thirty (30) days of the end of

18
19  informal negotiations.  If the City or Citizen Plaintiffs do not invoke formal dispute resolution

20  within thirty (30) days, EPA's position shall be binding on the City and Citizen Plaintiffs.

21
22          2.      Within thirty (30) days after receipt of a City's or Citizen Plaintiffs'

23  statement of position, the Director shall provide a written Response to the City's or Citizen

24  Plaintiffs' statement of position, including, but not limited to, any factual data, analysis, or

25
26  opinion supporting that position and all supporting documentation relied upon by EPA.  That

27
28                                          -41-

position shall be considered binding and the City and Citizen Plaintiffs shall waive any right to challenge that position unless, within thirty (30) days after receipt of the Director's decision, the City or Citizen Plaintiffs file and serve upon the United States a motion for judicial review of the decision. The motion shall include a description of the matter in dispute, the efforts made by the Parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Final Consent Decree. The schedules contained in the local rules for the United States District Court shall apply to the dispute; provided, however, the United States shall have at least thirty (30) days to file a response with an alternative proposal for resolution.

           3.      In proceedings on any dispute governed by this Section, the moving party shall have the burden by a preponderance of the evidence to prevail in the dispute regarding EPA's decision; provided, however, the City shall be considered the moving party with respect to Section VII (Compliance Actions); Section VIII (Plan and Report Review and Approval); Section XI (Stipulated Penalties); and Section XXIV (Termination).

        D.      The invocation of formal dispute resolution procedures under this Section shall not extend, postpone, or affect in any way any obligation of the City under this Final Consent Decree, not directly in dispute unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue; provided,

-42-

however, that the City may argue to the Court that stipulated penalties should not run after the matter has been fully briefed and submitted to the Court and provided that Plaintiffs may argue the contrary.  Payment shall be stayed pending resolution of the dispute.  Except as provided above, stipulated penalties shall accrue from the first day of non-compliance with any applicable provision of this Final Consent Decree.  In the event that the City does not prevail on the disputed issue, stipulated penalties may be assessed as provided in Section XI (Stipulated Penalties) of this Final Consent Decree.

      E.      Citizen Plaintiffs have the right to invoke Dispute Resolution pursuant to this Section IX (Dispute Resolution) in the following circumstances:

          1.      Citizen Plaintiffs may challenge an EPA action approving a major modification of the activities required in Section VII (Compliance Actions).  The Citizen Plaintiffs retain the right to dispute what constitutes a major modification.  For purposes of establishing what constitutes a major modification under this Subparagraph, Citizen Plaintiffs shall have the burden of establishing the same based upon the arbitrary and capricious standard of proof.

          2.      Citizen Plaintiffs may challenge an EPA action terminating the Final Consent Decree pursuant to Section XXIV (Termination).

          3.      With respect to any motion under this Section, the Citizen Plaintiffs shall

-43-

1    be considered the moving party.

2                          **X. FORCE MAJEURE**

3

4        A.      "Force majeure," for purposes of this Final Consent Decree, is defined as any

5    event arising from causes beyond the control of the City, of any entity controlled by the City, or

6    of the Contractors, that delays or prevents the performance of any obligation under this Final

7    Consent Decree, despite the City's best efforts to fulfill the obligation. The requirement that the

8    City exercise "best efforts to fulfill the obligation" includes using reasonable efforts to anticipate

9

10   any potential force majeure event and best efforts to address the effects of any potential force

11   majeure event as it is occurring and following the potential force majeure event, such that the

12   delay is minimized to the greatest extent possible. "Force Majeure" shall not, in any event,

13   include unanticipated or increased costs associated with implementation of this Final Consent

14   Decree, changed financial circumstances, or other financial or budgetary issues.

15

16       B.      If any event occurs or has occurred that may delay the completion of any

17   requirement of this Final Consent Decree, whether or not caused by a force majeure event, the

18   City shall notify EPA in writing, with copies to Baykeeper and Surfrider, within thirty (30) days

19   of when the City first knew, or in the exercise of reasonable diligence under the circumstances,

20

21   should have known of such event. The notice shall indicate whether the City claims that the

22   delay should be excused as a force majeure event. The notice shall describe in detail the basis for

23   the City's contention that it experienced a force majeure delay; the anticipated duration of the

24   delay; the precise cause or causes of the delay; all actions taken or to be taken to prevent or

25   minimize the delay; and a schedule for implementation of any measures to be taken to prevent or

26   mitigate the delay or the effect of the delay. The City shall adopt all reasonable measures to

27

28                                        -44-

avoid and minimize such delays. Failure to comply with the above requirements shall preclude the City from asserting any claim of force majeure. The City shall be deemed to know of any circumstance of which the City, any entity controlled by the City, or the Contractors knew or should have known.

C.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Final Consent Decree that are affected by the force majeure event will be extended by EPA in writing for such time as is necessary to complete those obligations and stipulated penalties shall not be due for such period. If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify the City in writing of its decision. If the City elects to invoke the Dispute Resolution procedures set forth in Section IX (Dispute Resolution) of this Final Consent Decree, it shall do so no later than thirty (30) days after receipt of EPA's notice. In any such proceeding, the City shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, and that the duration of the delay or the extension sought was or will be warranted under the circumstances. Copies of all documents under this Subparagraph shall be provided to Baykeeper and Surfrider.

D.     An extension of the time for performance of the obligations the City contends are affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. The City must make an individual showing of proof regarding each delayed incremental step or other requirement for which an extension is sought.

-45-

# XI. STIPULATED PENALTIES

A.     The City shall pay the stipulated penalties listed below upon written demand by the United States. Pursuant to its non-reviewable enforcement discretion, the United States may waive or reduce stipulated penalties. EPA need not provide a Notice of Violation prior to assessing stipulated penalties. A copy of the demand shall be provided to Baykeeper and Surfrider.

B.     COMPLIANCE MILESTONES

The City shall pay stipulated penalties for each failure to implement, achieve, or complete a requirement identified in Section VII (Compliance Actions) Paragraphs B - D of this Final Consent Decree as follows:

| Period of Noncompliance | Penalty per Milestone Date per Day of Violation |
| --- | --- |
| Days 1 - 14 | $ 750 |
| Days 15 - 28 | $1,500 |
| Days over 28 | $3,000 |

C.     REPORTING AND PLAN SUBMISSION

The City shall pay the stipulated penalties below for each day it fails to submit or revise a report or plan required by this Final Consent Decree.

| Period of Noncompliance | Penalty per Report/Plan per Day of Violation |
| --- | --- |
| Days 1 - 14 | $ 375 |
| Days 15 - 28 | $ 750 |
| Days over 28 | $1,500 |

D.   SANITARY SEWER OVERFLOWS

1.    Except as provided in Paragraph E below, the stipulated penalties set forth in this Paragraph apply to any SSO over one thousand (1,000) gallons if any portion of that spill reaches navigable waters.  The stipulated penalties set forth in this Paragraph apply to those SSOs that occur after the entry of the Final Consent Decree.  Gallons refer to the total size of the overflow, spill, or release.  Successive SSOs refer to the same part or reach of sewer line (from manhole to manhole or from manhole to pump station), the same manhole, or the same pump station under similar circumstances.  The City shall provide notice of the SSO to EPA:

a.    When required by law to be reported to the Board and/or EPA; and

b.    When required by the reports under Section VII (Compliance Actions) of this Final Consent Decree.

2.    EPA may assess penalties as provided below:

a.    Over one thousand (1,000) and up to ten thousand (10,000) gallons

| | | |
|---|---|---|
| (i) | First successive SSO | $ 2,000 |
| (ii) | Second successive SSO | $ 5,000 |
| (iii) | Third successive SSO | $ 7,500 |
| (iv) | Fourth and subsequent successive SSOs | $10,000 |

b.    More than 10,000 gallons

| | | |
|---|---|---|
| (i) | First successive SSO | $ 4,000 |
| (ii) | Second successive SSO | $10,000 |
| (iii) | Third successive SSO | $15,000 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(iv)     Fourth and subsequent

successive SSOs            $20,000

If the City does not reasonably estimate the size of a SSO, the SSO will be presumed to be more than ten thousand (10,000) gallons for the purpose of determining stipulated penalties.

E.     OTHER PROVISIONS:

1.     The City shall not be liable for stipulated penalties under Paragraph D above if the City demonstrates that it is in compliance with both the response and reporting requirements in Section VII (Compliance Actions) Paragraphs B 1 - 4, and Paragraphs C 1b.; C 2a.; C 3a.-b.; C 4a.-d., C 5a.-b.; C 6b. (i-v); C 7a.; C 7c.(i-iv); C 8a.; C 9b.; and D 2.

2.     The City shall not be liable for stipulated penalties under Paragraph D above if the City demonstrates that the SSO was caused by an Act of God, vandalism, a non-City Contractor, or any act of a third party not working directly or indirectly on behalf of the City.

3.     The City shall not be liable for stipulated penalties under Paragraph D above for any SSO downstream of the Marine Corps Air Station Miramar that was caused by the Marine Corps Air Station Miramar; provided however, this exception applies only if the City utilizes best efforts to reach an agreement with Marine Corps Air Station Miramar to address the potential for SSOs.

4.     Payment of stipulated penalties as provided in this Section shall be in addition to any other rights or remedies, including statutory penalties, which may be available to the United States by reason of the City's failure to comply with this Final Consent Decree and all applicable federal, state, or local laws, regulations, wastewater discharge permits, and all other

-48-

1    applicable permits.

2         5.    The United States will credit the City for any stipulated penalty paid with

3
4    respect to any SSO pursuant to this Final Consent Decree in any future enforcement action in

5    which EPA seeks penalties for that SSO.  The United States will credit the City against any

6    stipulated penalty assessed pursuant to this Final Consent Decree with respect to any EPA

7    enforcement action in which penalties were paid for that SSO.

8         6.    In exercising its discretion of whether to assess a stipulated penalty for an

9
10   SSO, the United States will consider the amount of sewage recovered.

11        7.    In exercising its discretion of whether to assess a stipulated penalty for an

12   SSO, the United States will consider the length of time after which a disputed issue has been

13   fully briefed and is under the consideration of the United States District Court pursuant to

14
15   Section IX (Dispute Resolution) of this Final Consent Decree.

16        8.    SSBs shall not be subject to stipulated penalties under this Final Consent

17   Decree.

18                          **XII.  PAYMENTS**

19        The City shall pay stipulated penalties owing to the United States by certified or cashier's

20   check in the amount payable to the "United States Department of Justice" referencing "DOJ No.

21
22   90-5-1-1-4364/1" and United States Attorney's file number (to be provided), and delivered to the

23   office of the United States Attorney, Southern District of California, 880 Front Street, Room

24   6293, San Diego, California,  92101.  In the event that any payments are not received when due,

25   interest shall continue to accrue on the unpaid balance through the date of payment at the rate

26   established by the Secretary of the Treasury, pursuant to 28 U.S.C. § 1961.

27

28                               -49-

## XIII. RIGHT OF ENTRY

A.      EPA, their employees, and authorized agents (including contractors and subcontractors) upon presentation of valid credentials or other official authorization, shall have access to enter the City's publicly-owned treatment works for the purposes of monitoring, investigating, and/or verifying the City's compliance with all terms of this Final Consent Decree. Where appropriate, EPA shall provide reasonable notice to the City.

B.      Nothing in this Section shall be construed to limit the right of the United States to enter the City's property, to require monitoring, or to obtain information pursuant to federal or state law or regulation.

## XIV. NOT A PERMIT

This Final Consent Decree is neither a permit nor a modification of existing permits under any federal, state, or local law and in no way relieves the City of its responsibilities to comply with all applicable federal, state, and local laws, and regulations.

## XV. ONGOING COMPLIANCE RESPONSIBILITIES

A.      This Final Consent Decree does not relieve the City of any obligation to apply for, obtain and comply with the requirements of any new or existing NPDES permit or its duty to comply with the CWA and any other applicable federal and state laws, regulations, and permits.

B.      The United States, by its consent to the entry of this Final Consent Decree, does not warrant or aver in any manner that the City's compliance with this Final Consent Decree will result in compliance with the provisions of the CWA or with any NPDES permit.

C.      Notwithstanding review or approval by the United States of any plans, reports, policies, or procedures formulated pursuant to this Final Consent Decree, the City shall remain

1  solely responsible for any non-compliance with the terms of this Final Consent Decree, all

2  applicable permits, the CWA, and regulations promulgated thereunder.

3  ## XVI. EFFECT OF SETTLEMENT

4
5      A.      This Final Consent Decree resolves all civil claims and claims for relief related

6  thereto against the City by EPA, Baykeeper, and Surfrider for the violations alleged in the

7  Complaints up to December 31, 2005.

8      B.      This Final Consent Decree does not limit or affect the rights of Defendant or of

9  the United States against any third parties not party to this Final Consent Decree, nor does it limit

10 the rights of third parties not parties to this Final Consent Decree, against the City, except as

11 otherwise provided by law.  This Final Consent Decree shall not be construed to create rights in,

12

13 or grant any cause of action to any third parties not parties to this Final Consent Decree.

14     C.      The United States reserves all legal and equitable remedies available to enforce

15 the provisions of this Final Consent Decree, except as expressly stated herein.  This Final

16 Consent Decree shall not be construed to limit the rights of the United States to obtain penalties

17

18 or injunctive relief under the Act or the implementing regulations, or under other federal laws,

19 regulations or permit conditions, except as expressly specified in this Section XVI (Effect of

20 Settlement).  The United States further reserves all legal and equitable remedies, including but

21 not limited to injunctive relief, to address any imminent and substantial endangerment to the

22

23 public health or welfare or the environment.

24     D.      This Final Consent Decree shall be considered "diligent prosecution" for purposes

25 of Section 1319(G)(6) of the CWA.

26

27

28                                      -51-

## XVII.  <u>RESERVATION BY BAYKEEPER AND SURFRIDER</u>

Baykeeper and Surfrider may submit comments to EPA regarding the City's annual report or the City's request for a major modification to this Final Consent Decree.  Comments must be submitted within thirty (30) days of EPA's receipt of the City's annual report or the City's request for a major modification of the Final Consent Decree.

## XVIII.  <u>NO ADMISSION OF LIABILITY</u>

Neither the execution of this Final Consent Decree nor any action taken hereunder is an admission of any fact, liability, or wrongdoing of any kind regarding any of the matters addressed in the Final Consent Decree.

## XIX.  <u>CERTIFICATION OF SUBMISSIONS/RECORD RETENTION</u>

A.      Any notice, report, certification, data presentation, or other document submitted by the City pursuant to this Final Consent Decree, which discusses, describes, demonstrates, or supports any finding or makes any representation concerning the City's compliance or non-compliance with any requirement(s) of this Final Consent Decree, shall contain the following certification by the City, signed by a responsible City official:

"I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted, based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."

_____
Signature
Title

-52-

B.      The notice and reporting requirements contained in this Final Consent Decree do not relieve the City of its obligations to submit any other reports or information required by applicable law.  Notice of a violation does not excuse the violation.  Any information provided under the reporting requirements of this Final Consent Decree may be admissible evidence in any proceeding to enforce the provisions of this Final Consent Decree or the applicable law.

## XX.  FORM OF NOTICE

A.      Unless otherwise specified, or as may be changed from time to time, all reports, notices, or any other written communications required to be submitted under this Final Consent Decree shall be sent to the respective Parties at the following addresses:

As to the City:
City Attorney
City of San Diego
1200 Third Avenue, Suite 1100
San Diego, California  92101

As to Surfrider and Baykeeper:
Executive Director
Surfrider Foundation
P.O. Box 6010
San Clemente, California  92674-6010

Surfrider Foundation
San Diego County Chapter
P.O. Box 1511
Solana Beach, California  92075

San Diego Coastkeeper
2825 Dewey Road, Suite 200
San Diego, California  92106

Rory Wicks
Marco A. Gonzalez
Coast Law Group LLP
169 Saxony Road, Suite 204
Encinitas, California  92024

-53-

1

<u>As to the United States</u>
Section Chief

2

Environmental Enforcement Section
Environment & Natural Resources Division

3

United States Department of Justice
P.O. Box 7611

4

Washington, D.C. 20044-7611

5

6

Gary Hess, ORC-2
Attorney

7

Air, Toxics, Water, and General Law Group
Office of Regional Counsel

8

U.S. Environmental Protection Agency
75 Hawthorne Street

9

San Francisco, California 94105

10

Jo Ann Cola, WTR-7

11

Water Management Division
U.S. Environmental Protection Agency

12

75 Hawthorne Street

13

San Francisco, California 94105

14

B.     Notifications of communications shall be deemed submitted on the date they are

15

postmarked and sent by certified mail, return receipt requested, or deposited with an overnight

16

mail/delivery service.

17

18

**XXI.  <u>COSTS OF SUIT/COMPLIANCE MONITORING</u>**

19

A.     Citizen Plaintiffs' reasonable attorneys' fees and costs incurred through March,

20

2006, were paid by the City following entry of the Partial Consent Decree and the Second Partial

21

Consent Decree. The Parties agree that Citizen Plaintiffs are entitled to, and the City will pay, the

22

outstanding reasonable attorneys' fees and cost through the date of entry of this Final Consent

23

Decree.  The Parties will attempt to reach agreement as to the appropriate amount to be paid.  If

24

25

they are unable to do so, Citizen Plaintiffs may file an application with this Court for the

26

recovery of reasonable fees and costs within ninety days after entry of this Final Consent Decree,

27

28

-54-

1  or by such later date as set by the Court upon motion or otherwise.  The City shall have not less

2  than 30 days to respond to Citizen Plaintiffs' fee application.

3      B.      Nothing in this Final Consent Decree restricts or otherwise compromises Citizen

4
    Plaintiffs' right to request reimbursement for attorney fees and costs incurred to monitor and to
5

6  enforce City's compliance with this Final Consent Decree.  The City reserves any and all defenses

7  to such claims.

8                         **XXII.  MODIFICATION**

9
        This Final Consent Decree contains the entire agreement of the Parties.
10

11      A.      Any material modification to this Final Consent Decree must be with the written

12  agreement of the Parties and approval by the Court, except as provided herein.

13      B.      Notwithstanding Paragraph A above, EPA and the City can agree in writing and

14  without Court approval to make non-material modifications to the requirements of this Final

15
    Consent Decree.  Baykeeper and Surfrider shall receive copies of any such modifications.
16

17      C.      Notwithstanding any provision of this Final Consent Decree, the City may seek

18  modification of this Final Consent Decree pursuant to Rule 60(b) of the Federal Rules of Civil

19  Procedure.

20                  **XXIII.  CONTINUING JURISDICTION OF THE COURT**

21
        The Court shall retain jurisdiction to enforce the terms and conditions of this Final
22

23  Consent Decree and to resolve disputes that may arise under this Final Consent Decree to the

24  extent that this Final Consent Decree provides for resolution of disputes by the Court.

25                         **XXIV.  TERMINATION**

26      A.      Except as provided in Paragraph D below, this Final Consent Decree shall

27

28                              -55-

terminate on July 1, 2013, or three (3) months after the City has complied with Paragraph C below, whichever is later, provided that the City has complied with all of its obligations under this Final Consent Decree as provided in Paragraphs B and C below.

B.     By no earlier than October 1, 2012, the City shall certify to EPA with appropriate documentation and copies to Baykeeper and Surfrider, that the City has:

1.     Paid any penalties, fees, and interest due under Section XI (Stipulated Penalties);

2.     Completed two (2) cleanings of its two thousand five hundred thirty eight (2,538) mile small diameter gravity collection system by April 1, 2009; cleaned an additional two thousand three hundred twenty three (2,323) miles of its small diameter gravity collection system and completed two (2) cleanings and/or inspections of its two hundred eighty one (281) mile large diameter gravity collection system after April 1, 2004, as required by Section VII (Compliance Actions) Paragraph C 1b.;

3.     Inspected all manholes in its Collection System at least every five (5) years as required by Section VII (Compliance Actions) Paragraph C 4c;

4.     Completed all capital projects as required by Section VII (Compliance Actions) Paragraphs C 8a. and D 2;

5.     Repaired, rehabilitated, or replaced four hundred fifty (450) miles of pipeline since January 1, 2002, as required by Section VII (Compliance Actions) Paragraph C 5b.;

6.     Completed all canyon economic and environmental analyses as required by Section VII (Compliance Actions) Paragraph C 7a.;

7.       Secured all approximately five thousand eight hundred (5,800) +/- manhole covers in remote areas as required by Section VII (Compliance Actions) Paragraph C 9b.; and

8.       Completed CCTV inspection of one thousand five hundred twenty (1,520) miles of pipelines as required by Section VII (Compliance Actions) Paragraph C 4b.

C.       By no earlier than April 1, 2013, the City shall certify to EPA, with appropriate documentation and copies to Baykeeper and Surfrider, that the City has achieved compliance with all other obligations in Section VII (Compliance Actions) Paragraphs B - D. Specifically, the City is required to show that it is in compliance with all other obligations in Section VII (Compliance Actions) Paragraphs B - D, during either the time period from October 1, 2012 thru April 1, 2013, or the six (6) month time period following the City's completion of work items in Paragraph B 1 - 8 contained in the above Paragraph, whichever is later.  The City is also required to show that it has paid any penalties, fees, and interest due under Section XI (Stipulated Penalties) during the six (6) month period described in this Paragraph.  Once the certification has been submitted, pursuant to Paragraph B above, the City shall have no obligation to continue to perform the requirements under Section VII (Compliance Actions) Paragraphs C 1, C 4b., C 4c., C 5b., C 7a., C 8a., C 9b., and D 2.

D.       The Final Consent Decree shall not terminate:  1) if the City has not filed the certification requests described in Paragraphs B and C above, or 2) if EPA, Baykeeper or Surfrider object in writing to the City's certification by July 1, 2013, or three (3) months after the City has complied with Paragraph C, whichever is later.  Such objections shall set forth the specific components of the certification alleged not to be complete.  If any party objects in

-57-

writing to the City 's certification, such dispute shall be resolved pursuant to Section IX (Dispute Resolution).  This Final Consent Decree shall remain in effect pending resolution of the dispute, provided however, the City shall not be obligated to perform any obligation not expressly contested pursuant to this Paragraph.

## XXV. SIGNATORIES

A.      The signatories for the Parties certify that they are fully authorized to enter into the terms and conditions of this Final Consent Decree and to execute and legally bind such Parties to this document.

B.      The Parties shall identify on the attached signature pages the name, address, telephone number, and fax number of one (1) agent who is authorized to accept service by mail on the Party 's behalf with respect to all matters arising under or related to this Final Consent Decree.

## XXVI. COUNTERPARTS

This Final Consent Decree may be executed in any number of counterpart originals, each of which shall be deemed to constitute an original agreement, and all of which shall constitute one (1) agreement.  The execution of one counterpart by any party shall have the same force and effect as if that party had signed all other counterparts.

## XXVII. PUBLIC COMMENT

The United States consents to the entry of this Final Consent Decree subject to the publication of notice of this Final Consent Decree pursuant to 28 C.F.R. 50.7.  The United States reserve its rights to withdraw or withhold consent to this Final Consent Decree if public comments disclose facts or considerations indicating this Final Consent Decree is inappropriate,

-58-

1  improper, or inadequate.  The City agrees to entry of this Final Consent Decree without further

2  notice.

4      IT IS SO ORDERED this _9_ day of _October_, 2007.

HON. RUDI M. BREWSTER
UNITED STATES DISTRICT COURT JUDGE
SOUTHERN DISTRICT OF CALIFORNIA

-59-

1  THE UNDERSIGNED PARTY enters into this Final Consent Decree in the matter of <u>United</u>

2  <u>States, et al. v. City of San Diego</u>.

3      FOR THE UNITED STATES OF AMERICA:

4

5

6

7      _____          <u>18 July 2007</u>
       RONALD J. TENPAS                    Dated
8      Acting Assistant Attorney General
9      Environment and Natural Resources
           Division
10     United States Department of Justice
       Washington, DC  20530
11

12

13     _____          <u>July 28, 2007</u>
14                                         Dated
       BRADLEY R. O'BRIEN
15     Environmental Enforcement Section
       Environment and Natural Resources
16         Division
       United States Department of Justice
17     301 Howard Street, Suite 1050
       San Francisco, California  94105
18

19

20

21

22

23

24

25

26

27

28                              -60-

THE UNDERSIGNED PARTY enters into this Final Consent Decree in the matter of <u>United States, et al. v. City of San Diego.</u>

FOR THE ENVIRONMENTAL PROTECTION AGENCY:

_17 JULY 2007_
Dated

WAYNE NASTRI
Regional Administrator
U.S. Environmental Protection Agency
Region IX
75 Hawthorne Street
San Francisco, California  94105

_July 30, 2007_
Dated

GRANTA Y. NAKAYAMA
Assistant Administrator
Office of Enforcement & Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, DC  20460-0001

_July 17, 2007_
Dated

GARY HESS
Office of Regional Counsel
U.S. Environmental Protection Agency
Region IX
75 Hawthorne Street
San Francisco, California  94105

-61-

THE UNDERSIGNED PARTY enters into this Final Consent Decree in the matter of <u>United States, et al. v. City of San Diego</u>.

FOR SAN DIEGO BAYKEEPER:

BRUCE REZNIK
Executive Director
San Diego Baykeeper

5/30/07
Dated

MARCO A. GONZALEZ
Coast Law Group LLP
169 Saxony Road, Suite 201
Encinitas, CA 92024

7/10/07
Dated

-62-

1 | THE UNDERSIGNED PARTY enters into this Final Consent Decree in the matter of <u>United States, et al. v. City of San Diego</u>.

2

3       FOR SURFRIDER FOUNDATION:

4

5

6

7       JIM MORIARTY                                Dated

8       Executive Director
        Surfrider Foundation
9

10

11

12      RORY R. WICKS                               July 10, 2007
                                                    Dated
13      Coast Law Group LLP
        169 Saxony Road, Suite 201
14      Encinitas, CA 92024

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                    -63-

1  THE UNDERSIGNED PARTY enters into this Final Consent Decree in the matter of <u>United
2  States, et al. v. City of San Diego</u>.

3

      FOR THE CITY OF SAN DIEGO:

4

5

6

7  TIMOTHY C. BERTCH, Ph.D.          05 JULY 2007
   Director                               Dated
8     Metropolitan Wastewater Department
9     9192 Topaz Way
   San Diego, California  92123
10

11

12

13  THOMAS C. ZELENY          July 5, 2007
   Deputy City Attorney                  Dated
14     Office of the San Diego City Attorney
15     1200 3rd Avenue, Suite 1100
   San Diego, California  92101
16

17

18                                     JS
19  JERRY SANDERS             7.05-07
   Mayor                                 Dated
20     City of San Diego
21     202 "C" Street, 11th floor
   San Diego, California  92101
22

23

24

25

26

27

28                         -64-

1    RONALD J. TENPAS
     Acting Assistant Attorney General
2    Environment & Natural Resources Division
     United States Department of Justice
3    BRADLEY R. O'BRIEN - State Bar No. 189425
     Environmental Enforcement Section
4    Environment and Natural Resources Division
     United States Department of Justice
5    301 Howard Street, Suite 1050
     San Francisco, California 94105
6    Telephone: (415) 744-6484
     Facsimile: (415) 744-6476

7    KAREN P. HEWITT
     United States Attorney
8    Southern District of California
     San Diego County Office - Federal Office Building
9    880 Front Street, Room 6293
     San Diego, California 92101
10   Telephone: (619)557-5610
     Facsimile: (619)557-5782

11   Attorneys for Plaintiff United States of America

12   RORY R. WICKS
     MARCO A. GONZALEZ
13   Coast Law Group, LLP
     169 Saxony Road, Suite 204
14   Encinitas, California 92024
     Telephone: (760)942-8505 ext. 102
15   Facsimile: (760)942-8515

16   DANIEL COOPER
     Lawyers for Clean Water
17   1004 A O'Reilly Avenue
     San Francisco, California 94129
18   Telephone: (415)561-2222
     Facsimile: (415)561-2223

19   Attorneys for Plaintiff Surfrider Foundation and San Diego Baykeeper

20   MICHAEL J. AGUIRRE
     City Attorney
21   THOMAS C. ZELENY
     Deputy City Attorney
22   Office of the San Diego City Attorney
     1200 3rd Avenue, Suite 1100
23   San Diego, California 92101
     Telephone: (619) 533-5800
24   Facsimile: (619) 533-5856

25   Attorneys for Defendant City of San Diego

26

27

28